**Case No. 21-4086**

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

**HOWARD O. FORD,**

**Plaintiff/Appellant,**

**v.**

**MEGAN J. BRENNAN,**

**Defendant/Appellee.**

---

On Appeal from the United States District Court
For the District of Utah, Central Division
The Honorable Bruce S. Jenkins, District Judge
District Court Consolidated Case No. 2:15-cv-00539-BSJ

---

**BRIEF FOR DEFENDANT/APPELLEE**

---

TRINA A. HIGGINS
United States Attorney
District of Utah

AMANDA A. BERNDT
Assistant United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone (801) 524-5682
amanda.berndt@usdoj.gov

Attorneys for Defendant/Appellee

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................iii

STATEMENT OF PRIOR AND RELATED APPEALS ........................................v

STATEMENT OF THE ISSUES ..........................................................1

STATEMENT OF THE CASE.............................................................2

    I.    Factual Background ........................................................2

    II.   EEO Administrative Proceedings ...............................................7

    III.  District Court Proceedings ....................................................9

SUMMARY OF THE ARGUMENT...................................................10

STANDARD OF REVIEW ............................................................14

ARGUMENT............................................................................15

    I.    Ford failed to exhaust his administrative remedies with respect to his claim that the Postal Service failed to accommodate his disability ...................................................................15

    II.   Ford failed to present evidence supporting his claim that the Postal Service did not provide reasonable accommodations for his disability ...................................................................18

    III.  Ford failed to establish a prima facie case of discrimination under the Rehab Act because he did not present evidence that he suffered an adverse employment action................................21

    IV.  Ford failed to present evidence supporting his claim that the Postal Service retaliated against him because of his prior Rehab Act claim ...................................................................27

V.      Ford failed to present evidence that the Postal Service
        interfered with his FMLA rights................................................**30**

**VI.**  Ford failed to present evidence supporting his claim that the
        Postal Service retaliated against him for exercising his right to
        FMLA leave...............................................................................**32**

CONCLUSION.............................................................................................**34**

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Bass v. Potter,*
 522 F.3d 1098 (10th Cir. 2008)............................................................31

*Bd. of Cnty. Comm'rs v. Exby-Stolley,*
 141 S. Ct. 2858 (2021)..........................................................................22

*Beaird v. Seagate,*
 *Tech. Co.*, 145 F.3d 1159 (10th Cir. 1998)...........................................26

*Campbell v. Gambro Healthcare, Inc.,*
 478 F.3d 1282 (10th Cir. 2007)......................................................32, 33

*Dalpiaz v. Carbon Cnty.,*
 760 F.3d 1126 (10th Cir. 2014)......................................................30, 31

*Davidson v. America Online, Inc.,*
 337 F.3d 1179 (10th Cir. 2003)............................................................21

*Doe v. Univ. of Denver,*
 952 F.3d 1182 (10th Cir. 2020)............................................................14

*EEOC v. C.R. England,*
 644 F.3d 1028 (10th Cir. 2011)............................................................23

*Exby-Stolley v. Bd. of Cnty. Comm'rs,*
 979 F.3d 784 (10th Cir. 2020)..............................................................22

*Fischer v. Forestwood Co., Inc.,*
 525 F.3d 972 (10th Cir. 2008)........................................................26, 27

*Green v. Brennan,*
  136 S. Ct. 1769 (2020) ........................................................................17

*Green v. Donahoe,*
 760 F.3d 1135 (10th Cir. 2014)............................................................17

*Haynes v. Level 3 Communications, LLC,*
    456 F.3d 1215 (10th Cir. 2006) ..................................................... 22, 23

*Hicks v. Gates Rubber Co.,*
    833 F.2d 1406 (10th Cir. 1987) .......................................................... 25

*Hillig v. Rumsfeld,*
    381 F.3d 1028 (10th Cir. 2004) .......................................................... 23

*Hysten v. Burlington N. and Santa Fe Ry. Co.,*
    296 F.3d 1177 (10th Cir. 2002) .......................................................... 21

*Johnson v. Weld Cnty.,*
    594 F.3d 1202 (10th Cir. 2010) .......................................................... 14

*Lincoln v. BNSF Ry. Co.,*
    900 F.3d 1166 (10th Cir. 2018) ..................................................... 15, 16

*Martinez v. Potter,*
    347 F.3d 1208 (10th Cir. 2003) ..................................................... 15, 16

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ...................................................................... 15, 16

*Nelson v. City of Albuquerque,*
    921 F.3d 925 (10th Cir. 2019) ............................................................ 15

*Proctor v. United Parcel Service,*
    502 F.3d 1200 (10th Cir. 2007) .......................................................... 28

*Ransom v. U.S. Postal Service,*
    170 F. App'x 525 (10th Cir. 2006) ...................................................... 15

*Roberts v. Roadway Express, Inc.,*
    149 F.3d 1098 (10th Cir. 1998) .......................................................... 24

*Shorter v. ICG Holdings, Inc.,*
    188 F.3d 1204 (10th Cir. 1999) .......................................................... 21

*Somoza v. University of Denver,*
    513 F.3d 1206 (10th Cir. 2008) ..................................................... 27, 28

iv

**STATUTES**

5 U.S.C. § 702(a)........................................................................15

29 U.S.C. § 2617(c)(2)................................................................31

29 U.S.C. §§ 701 .......................................................................10

29 U.S.C. §§ 2601–54....................................................................2

**RULES**

FED. R. CIV. P. 56(a)..................................................................14

**REGULATIONS**

5 C.F.R. § 890.303 ....................................................................30

29 C.F.R. § 1614.105(a)(1) .........................................................15

## STATEMENT OF PRIOR AND RELATED APPEALS

There are no prior or related appeals.

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| HOWARD O. FORD,<br><br>    Plaintiff/Appellant,<br><br>    vs.<br><br>MEGAN J. BRENNAN, Postmaster General, U.S. Postal Service,<br><br>    Defendant/Appellee. | No. 21-4086<br><br>BRIEF FOR THE DEFENDANT/APPELLEE |

### STATEMENT OF THE ISSUES

1.    Whether Ford failed to exhaust his administrative remedies with respect to his claim that the Postal Service did not provide a reasonable accommodation for his disability in 2013.

2.    Whether the district court correctly ruled that Ford failed to present evidence that the Postal Service did not provide reasonable accommodations for his disability.

3.    Whether the district court correctly ruled that Ford failed to present evidence that he suffered an adverse employment action.

4.    Whether Ford failed to present evidence that the Postal Service retaliated against him on account of his disability.

5.    Whether Ford failed to present evidence that the Postal Service interfered with his rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–54 (FMLA).

6.    Whether Ford failed to present evidence that the Postal Service retaliated against him for exercising his rights under FMLA.

## STATEMENT OF THE CASE

### I.    Factual Background

Howard Ford began as a city carrier with the Postal Service in Cottonwood Heights, Utah, in April 1987. Joint Appendix ("App.") Vol. A at 100. In 2012, due to an on-the-job injury that had occurred in 2011, Ford was medically restricted from working more than eight hours per day. *Id*. at 102. Ford took FMLA-protected leave from April 16 through April 29, 2013. *Id*. at 200. Ford took paid sick leave on some of those days and paid annual leave or leave without pay on others. *Id*.

When Ford returned to work on May 1, 2013, his direct supervisor, Heidi Clark, requested a doctor's note to document the reason for his sick-leave absence. *Id*. at 160. This was in accordance

2

with the Postal Service's sick-leave policy. *Id*. at 212 (§ 513.36). Later that day, Ford attempted to deliver a piece of foreign express mail at 4:25 p.m., though it should have been delivered no later than 3:00 p.m. *Id*. at 161. Clark later issued a letter of warning to Ford for his failure to timely attempt delivery of the foreign express mail. *Id*. at 220. Ford filed a union grievance over the letter, and the Postal Service agreed to remove the letter from his personnel file. *Id*. at 223.

On June 7, 2013, Clark issued a letter of warning to Ford for leaving the Post Office premises and extending the time of his break without notifying his supervisor. *Id*. at 225.

Ford alleges that on July 16, 2013, Clark criticized the time he said he would need to complete his office tasks before leaving to deliver mail. *Id*. at 164. Later that day, as Ford was transferring mail from his work station to his delivery vehicle, Clark instructed him to use an orange parcel "gurney," which was capable of carrying all of the mail in a single trip, instead of a "u-cart" that would require two trips. *Id*. at 165–66. Ford initially refused to do that because he claimed his doctor had advised him not to do something if it hurt. *Id*. at 165. After further discussion, Ford followed Clark's order to make one trip to his truck

with the gurney. *Id*. at 166. As he did so, Ford alleges he heard a pop in his neck and felt pain going down both arms. *Id*. at 167. After filling out an incident report form, Ford told Clark that he was in pain and that he was going home to take pain medication. *Id*. at 167–68. Clark told him that if he was leaving because of the injury, he needed to go to a doctor. *Id*. Ford left work and went to a doctor at an occupational-medicine clinic. *Id*. Ford then went home per the doctor's instructions. *Id*. at 169.

Ford was off work from July 17 through July 23. *Id*. at 177, 200. July 21 and July 23 were his regular off days, and he took FMLA-protected leave without pay on July 17–20 and July 22 because of his neck injury. *Id*. Ford's doctor, Eric Wood, issued a report dated July 22, 2013, in which he recommended that Ford be allowed to use the u-cart to avoid aggravation of his neck injury. *Id*. at 228. When Ford returned to work on July 24, Heidi Clark told him she had received Dr. Wood's report. *Id*. at 177. Ford alleges that Clark interpreted Dr. Wood's recommendations as "suggestions," but Ford was allowed to load the mail in the u-cart as his doctor recommended. *Id*. ("I loaded the mail my way, safely, not all in the parcel gurney at the same time . . . .").

Ford worked on July 24–26, took FMLA-protected leave without pay on July 27, and was not scheduled to work on July 28. *Id*. at 200.

When Ford returned to work on July 29, 2013, he got into an argument with Clark when she ordered him to deliver his mail rather than allowing him two hours to discuss "a lot of grievances" with his union representative. *Id*. at 177. Ford asked for permission to "go home and work on the problems from there to get things straightened out." *Id*. Clark allowed Ford to go home but required that he see a doctor. *Id*. Ford saw Dr. Marc Morse later that afternoon. *Id*. Dr. Morse issued a report dated July 29, 2013, excusing Ford from work from July 29 to August 7. *Id*. at 230. Dr. Morse thereafter issued reports advising the Postal Service that he was treating Ford for "severe depression and anxiety" and that Ford was "unable to return to work at this time." *Id*. at 231–46. Dr. Morse's notes excused Ford's absences from work from July 29, 2013 through July 30, 2014, and from October 22, 2014 through July 1, 2015. *Id*.

Ford was on FMLA-protected leave from July 29 through September 14, 2013. *Id*. at 200–01. Because this exhausted his FMLA leave for the year, Ford took unscheduled sick leave from September 15

through October 7. *Id*. at 200–01, 250. Beginning October 8, Ford was in leave-without-pay status and never returned to work or pay status with the Postal Service. *Id*. at 200–05.

After Ford had been in leave-without-pay status for a year, the Postal Service issued a notice of its intent to separate Ford from the Postal Service due to his inability to perform his job functions. *Id*. at 252. The notice advised Ford that "[t]his action is purely an administrative matter and is not of a disciplinary nature," and that he had the right to file a union grievance about the proposed separation. *Id*. Ford filed a grievance, and the Postal Service rescinded the notice of separation on November 10, 2014. *Id*. at 254.

In November 2014, the Postal Service offered Ford a modified job assignment with reduced physical demands in accordance with his doctor's recommendations. *Id*. at 228, 259–61. Ford did not return to work, however, because his depression and anxiety prevented him from working. *Id*. at 243–46; App. Vol. C at 104–05.

Ford applied for a disability retirement from the Postal Service, which was approved by the Office of Personnel Management (OPM) on

April 18, 2015, and was processed by the Postal Service on May 4, 2015.
App. Vol. A at 100; App. Vol. C at 143.

## II.    EEO Administrative Proceedings

Ford first sought EEO counseling on September 4, 2013, and he
filed an informal complaint asserting gender, age, and disability
discrimination on September 11, 2013. App. Vol. A at 196.[1] Ford filed a
formal complaint of discrimination on October 8, 2013, in which he
again asserted discrimination based on gender, age, and disability. *Id.*
at 104.[2] Neither the informal complaint nor the formal complaint
alleged that the Postal Service had failed to provide a reasonable
accommodation for Ford's disability. The Postal Service accepted for
investigation various instances of alleged discrimination and informed
Ford that he could submit a written response to the notice if he did "not
agree with the defined accepted issue(s)." *Id.* at 269. Ford did not

---

[1]    In his informal complaint of discrimination, Ford identified David
Holdsworth, "Attorney-At-Law," as his representative. App. Vol. A at 198.
Mr. Holdsworth represented Ford throughout the EEO process and in the
district court proceedings at issue in this appeal.

[2]    Ford's formal complaint of discrimination was signed by both Ford and
Mr. Holdsworth and was transmitted to the Postal Service by Mr.
Holdsworth. App. Vol. A at 104, 109.

challenge the Postal Service's statement of the issues accepted for investigation.

Over a year and a half after filing his formal EEO complaint, and after the investigation had concluded, Ford sought to amend his complaint to include a claim that the Postal Service had failed to accommodate his disability. *Id.* at 54–57, ¶¶ 78–80. The administrative law judge did not decide the motion to amend, so on November 1, 2016, Ford requested a final agency decision and a "right to sue" letter. *Id.* at 57, ¶ 82. The administrative law judge granted that request on December 20, 2016, and the Postal Service issued a final agency decision. *Id.* at 58, ¶ 84.

Ford next met with an EEO counselor the following year, on October 24, 2014, and filed a formal complaint on December 9, 2014. *Id.* at 271–73, 275–83.[3] Ford alleged in his 2014 complaint that the Postal Service had not accommodated his limitations resulting from the injury he suffered on July 16, 2013. *Id.* at 275–83. In addition, Ford claimed that the Postal Service had retaliated against him by issuing the notice

---

[3]    Ford's 2014 formal complaint was again signed by his counsel, David Holdsworth, as Ford's legal representative. App. Vol. A. at 275, 277.

of separation and by allegedly terminating his employment benefits. *Id*.
The Postal Service dismissed Ford's 2014 complaint to the extent Ford
was seeking to assert a failure-to-accommodate claim from 2013 on the
ground that it was untimely. *Id*. at 285–92. The Postal Service accepted
for investigation Ford's claim that the Postal Service failed to
accommodate his disabilities "on unspecified dates in 2014." *Id*. On
November 1, 2016, Ford requested to withdraw from the EEO process
so he could file this action. *Id*. at 60, ¶ 93. The Postal Service issued a
final agency decision on December 21, 2016. *Id*. at 60, ¶ 95.

## III. District Court Proceedings

Ford filed his first Complaint in district court on July 29, 2015. *Id*.
at 17. Ford alleged that the Postal Service had interfered with his
FMLA rights and retaliated against him for exercising those rights. *Id*.
Ford filed his second Complaint on March 10, 2017. *Id*. at 34. In that
Complaint, Ford alleged that the Postal Service had discriminated and
retaliated against him because of his gender, age, and disability.[4] *Id*.

---

[4]  In his response to the Postal Service's Motion for Summary Judgment,
Ford agreed to entry of judgment dismissing his gender and age claims. App.
Vol. B at 41; App. Vol. C at 251–52.

The second Complaint was consolidated with the first Complaint pursuant to court order. *Id.* at 9 (Docket No. 16).

The Postal Service filed a Motion for Summary Judgment on November 14, 2017. *Id.* at 77. On August 27, 2018, after briefing and oral argument, the district court issued an Order Granting Summary Judgment on All Claims. App. Vol. C at 251; App. Vol. D at 216. Ford filed a Motion to Alter Judgment on September 24, 2018. App. Vol. D at 7. On May 14, 2021, after briefing and oral argument, the district court issued a Memorandum Decision Denying Motion to Alter Judgment. *Id.* at 202; App. Vol. E at 7, 74. Ford timely filed a Notice of Appeal on July 12, 2021. App. Vol. D at 214.

## SUMMARY OF THE ARGUMENT

The district court correctly ruled that Ford failed to present evidence demonstrating that a reasonable jury could conclude that the Postal Service had discriminated or retaliated against him in violation of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. §§ 701 *et seq*. The district court also correctly ruled that Ford failed to present evidence demonstrating that a reasonable jury could conclude that the Postal

Service had interfered with his FMLA rights or retaliated against him for exercising FMLA rights.

Ford's claim that the Postal Service failed to reasonably accommodate his disability fails for two reasons. First, Ford did not seek EEO counseling within 45 days of the first alleged failure to accommodate, as required by statute. Second, Ford did not make a failure-to-accommodate claim in his first EEO complaint. Ford thus failed to exhaust his administrative remedies as to any failure-to-accommodate claim that accrued before September 9, 2014, barring him from judicial relief.

Ford also failed to present competent evidence supporting his failure-to-accommodate claims. When he suffered his workplace injury, Ford's supervisor allowed him to work within the restrictions recommended by his doctor. Shortly thereafter, Ford's doctor reported to the Postal Service that Ford was unable to return to work because of his "severe depression and anxiety." The Postal Service made an offer of modified work in order to accommodate Ford's limitations. The parties were not able to arrive at an acceptable accommodation, however, and Ford's doctor continued to recommend that he not return to work. At

that point the Postal Service accommodated Ford's disability by allowing him to remain in leave-without-pay status, which he did until OPM approved his application for disability retirement.

Ford's disparate-treatment claim also suffer from a fundamental defect: the absence of any evidence of an adverse employment action. To prove a prima facie case of discrimination or retaliation, Ford's burden includes the requirement of demonstrating that the Postal Service took some action against him that was materially adverse. Ford claims that the Postal Service's alleged failure to accommodate his condition was an adverse employment action. But as explained above, the Postal Service accommodated Ford's disability by allowing him to continue in leave-without-pay status until he obtained disability retirement.

Ford also claims that the Postal Service "terminated" him because of his disability. The Postal Service issued a notice of intent to separate Ford from service after he had been on leave without pay for over a year, but that notice was rescinded and Ford was never terminated. Instead, Ford's tenure with the Postal Service ended after he applied for and received a disability retirement.

Ford's final adverse-action theory is that the "totality" of the workplace incidents Ford complains of can be combined to form a single adverse employment action. But consideration of evidence in the aggregate has limited application in the context of a Rehab Act claim. A series of discrete acts of discrimination can be combined to prove a claim of hostile work environment or a constructive discharge, but Ford has not made either of those claims. The totality of the evidence can also be considered when evaluating whether an employer's explanation of its actions is a pretext for discrimination. This case, however, does not involve the question of pretext because, in the absence of an adverse employment action, Ford cannot meet his initial burden of establishing a prima facie case of discrimination or retaliation.

Ford's FMLA interference and retaliation claims are similarly lacking in factual support. Ford recites a variety of perceived slights—many of which occurred outside the FMLA's two-year statute of limitations—that have no conceivable relation to Ford's use of FMLA leave. Ford was repeatedly allowed to use FMLA leave in 2013, the year at issue. Ford was not disciplined for taking FMLA leave and, in fact, he used his entire 12-week statutory allotment of FMLA leave that year.

13

There is no credible evidence that the Postal Service interfered with Ford's FMLA leave rights or retaliated against him for his use of FMLA leave.

Finally, to establish a prima facie case of FMLA retaliation, Ford is required to establish that he suffered an adverse employment action. Ford relies on the same events as in his Rehab Act claim and, as explained above, none of those actions had any materially adverse effect on Ford's employment with the Postal Service.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo, applying the same standard the district court applies. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court considers the evidence in the light most favorable to the non-moving party. *Doe*, 952 F.3d at 1189. The Court "can consider only admissible evidence in reviewing an order granting summary judgment." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209 (10th Cir. 2010). In reviewing an order

granting summary judgment, this Court "can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) (internal quotations omitted).

The Court reviews a district court's ruling on a Rule 59(e) motion to alter judgment under an abuse-of-discretion standard. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).

## ARGUMENT

### I. Ford failed to exhaust his administrative remedies with respect to his claim that the Postal Service failed to accommodate his disability.

A federal employee who believes he has been subjected to discrimination prohibited by the Rehab Act is required to exhaust his administrative remedies before filing suit. *Ransom v. U.S. Postal Service*, 170 F. App'x 525, 527 & n.2 (10th Cir. 2006) (unpublished) (citing 5 U.S.C. § 7702(a)(2)). The employee must contact an EEO counselor within 45 days of any discrete act he believes was discriminatory. 29 C.F.R. § 1614.105(a)(1); *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)). The purpose of the exhaustion

requirement is to give the agency the information it needs to investigate and attempt to resolve the employee's complaint. *Martinez*, 347 F.3d at 1210. An employee who fails to exhaust his administrative remedies as to a claim of discrimination cannot pursue that claim in court. *Lincoln*, 900 F.3d at 1185.

Ford first met with an EEO counselor regarding his claim of disability discrimination on September 4, 2013. He thus is limited to pursuing claims arising from events that occurred on or after July 21, 2013. In his opening brief, Ford complains of numerous events that occurred before July 21. *See, e.g.*, Aplt. Br. at 37 n.9, 49. Because Ford failed to initiate the EEO process within 45 days of those events, he cannot rely on them in support of his claims in this case. *E.g.*, *Morgan*, 536 U.S. at 111 ("A discrete retaliatory or discriminatory act 'occurred' on the day it 'happened.'").

Ford focuses particularly on the events of July 16, 2013. Ford claims that the Postal Service failed to reasonably accommodate his physical limitations on that day when Heidi Clark ordered him to move his mail with the large gurney rather than the smaller u-cart. Aplt. Br. at 13–15. However, Ford failed to exhaust his administrative remedies

regarding that incident because he did not raise the issue with an EEO counselor within 45 days.

Nor did Ford raise a failure-to-accommodate claim related to any events after July 21, 2013, in either his informal complaint or his subsequent formal complaint.[5] The first time Ford asserted a claim that the Postal Service had not accommodated his disability was when he contacted an EEO counselor on October 24, 2014. As a result, Ford cannot recover on a failure-to-accommodate claim unless he can establish that he was denied a plausibly reasonable accommodation after September 9, 2014.[6]

---

[5]    Because Ford was represented by counsel at all stages of the administrative process, *see supra* at footnotes 2 and 3, his EEO pleadings are not entitled to the liberal construction afforded to complaints prepared without the assistance of counsel. *Green v. Donahoe*, 760 F.3d 1135, 1142 (10th Cir. 2014), *vacated and remanded on other grounds sub nom. Green v. Brennan*, 136 S. Ct. 1769 (2020).

[6]    Although the district court did not address failure to exhaust in its ruling, the Postal Service asserted failure to exhaust as an affirmative defense and raised the issue in its Motion for Summary Judgment. App. Vol. A at 75, 87–88.

## II.  Ford failed to present evidence supporting his claim that the Postal Service did not provide reasonable accommodations for his disability.

After Ford experienced the pain in his neck and arms on July 16, 2013, he left work and went to a doctor at an occupational-medicine clinic. Ford's doctor, Eric Wood, issued a report dated July 22, 2013, in which he recommended that Ford be allowed to use the u-cart to avoid aggravation of his neck injury. When Ford returned to work on July 24, Heidi Clark told him she had received Dr. Wood's report. Ford admits that he was allowed to load the mail in the smaller u-cart, as Dr. Wood had recommended. App. Vol. A at 177 ("I loaded the mail my way, safely, not all in the parcel gurney at the same time . . . ."). Thus, to the extent Dr. Wood's recommendation was intended to be a request for accommodation, the Postal Service complied and accommodated Ford's condition. Ford worked on July 24–26, took FMLA-protected leave without pay on July 27, and was not scheduled to work on July 28.

When Ford returned to work on July 29, 2013, he got into an argument with Clark because she ordered him to deliver his mail rather than allowing him two hours to consult with his union representative. Ford asked for permission to "go home and work on the problems from

there to get things straightened out." *Id*. Clark allowed Ford to go home but required that he see a doctor. Ford saw Dr. Marc Morse later that afternoon. Beginning July 29, 2013, Dr. Morse issued a series of reports advising the Postal Service that he was treating Ford for "severe depression and anxiety" and that Ford was "unable to return to work at this time." *Id*. at 231–46. Dr. Morse's recommendations that Ford's absences be excused between July 2013 and July 2015 never indicated that Ford could return to work with an accommodation.

Ford was on FMLA-protected leave from July 29 through September 14, 2013, then took unscheduled sick leave from September 15 through October 7. Beginning October 8, Ford went into leave-without-pay status and remained in leave-without-pay status until his disability retirement in 2015. In November 2014, the Postal Service offered Ford a modified job assignment with reduced physical demands as recommended by Ford's doctor. Ford did not accept this offer, however, because his depression and anxiety prevented him from working. Under these circumstances, the only reasonable accommodation available was a continued absence from work, which is

what the Postal Service provided Ford until his disability retirement began in May 2015.

The undisputed facts demonstrate that the Postal Service accommodated Ford's injury in late July 2013 by allowing him to transport his mail as he had requested. Thereafter, the Postal Service attempted to accommodate Ford with modified work requirements. Because Ford was unable to return to work even with those allowances, the Postal Service accommodated him in the only way possible, by allowing him to continue in leave-without-pay status.[7] The district court correctly concluded that Ford failed to produce evidence that the Postal Service failed to accommodate him.

---

[7]    In its order denying Ford's Motion to Alter Judgment, the district court correctly held that an employee cannot be considered a "qualified individual" under the ADA or Rehab Act if he is not able to be at work. App. Vol. D at 209–10 (collecting cases). Ford challenges this ruling on appeal, *see* Aplt. Br. at 45–48, but this Court need not reach the issue because the evidence establishes that Ford was accommodated with a leave of absence—the only accommodation available based on his limitations—and remained employed by the Postal Service until May 2015.

## III. Ford failed to establish a prima facie case of discrimination under the Rehab Act because he did not present evidence that he suffered an adverse employment action.

To prove his disparate-treatment claim under the Rehab Act, Ford must present direct or indirect evidence of discrimination. *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003). Direct evidence is evidence that, if believed, suffices to prove the fact of discriminatory animus without inference, presumption, or resort to other evidence. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999). Where there is no direct evidence of discrimination, the court reviews the evidence under the *McDonnell Douglas* burden-shifting framework. *Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). To establish a prima facie case of discrimination under that framework, a plaintiff must establish that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id.*

Ford incorrectly asserts that he need not prove that he suffered an adverse employment action if there is direct evidence of discrimination.

21

Aplt. Br. at 35, 40–41. Ford cites no authority for this theory, and the law is to the contrary. "[S]ince disparate-treatment claims concern discrimination in the form of an *action*, it naturally follows that a plaintiff alleging such a claim of discrimination must establish, *inter alia*, that there was both an employment action and that the action was undertaken with an intent that made it discriminatory, or phrased differently, that the action was taken 'because of the disability.'" *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795–96 (10th Cir. 2020) (citation omitted), *cert. denied sub nom. Bd. of Cnty. Comm'rs v. Exby-Stolley*, 141 S. Ct. 2858 (2021). Thus, Ford must establish that he suffered an adverse employment action to prove a prima facie case of disability discrimination under the Rehab Act.

In general, only acts that constitute a significant change in employment status—such as hiring, firing, failing to promote, a reassignment with significantly different responsibilities, or a decision causing a significant change in benefits—will rise to the level of an adverse employment action. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006). An action that causes harm to future employment prospects may also be considered an adverse

22

employment action. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032 (10th Cir. 2004). But "not every perceived indignity will rise to the level of an adverse action." *Haynes*, 456 F.3d at 1222. A "mere inconvenience or alteration of job responsibilities" does not constitute an adverse employment action. *EEOC v. C.R. England*, 644 F.3d 1028, 1042–43 (10th Cir. 2011). Accordingly, plaintiff must show that the alleged adverse action caused more than "*de minimis* harm" to or a "*de minimis* impact" on an employee's job opportunities or status. *Hillig*, 381 F.3d at 1033.

In an effort to establish that he suffered an adverse employment action, Ford focuses primarily on the allegation that he was "terminated" from his employment. Aplt. Br. at 35–36. But Ford was not terminated. On October 7, 2014, the Postal Service issued to Ford a "Notice of Separation – Disability." App. Vol. A at 252. This was not a termination but rather a notification of a planned separation scheduled to take effect a month later, on November 7, 2014. The notice explained that Ford's scheduled separation was "purely an administrative matter" due to the fact that Ford had been in leave-without-pay status for over 365 days. *Id*. The notice also advised Ford that he could file a grievance

23

if he disagreed with the proposed separation and that he would still be eligible to file an application for a disability retirement. In response to a grievance Ford filed, the Postal Service rescinded the notice and Ford remained employed until his application for a disability retirement was approved in mid-2015.

Ford's reliance on *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098 (10th Cir. 1998), is misplaced. In *Roberts*, the Court held that a termination can be an adverse action even if it is later withdrawn. *Id.* at 1104. But Ford was never terminated. Instead, he received a *notice* of a scheduled separation after he had been in leave-without-pay status for over a year, and the notice was later rescinded. Ford was able to maintain his health benefits despite his extended leave. Ford subsequently applied for a disability retirement, which was approved, and the Postal Service's personnel records show that Ford's separation from the Postal Service was a "Retirement–Disability," effective May 4, 2015. App. Vol. A at 100. The undisputed facts show that the notice of separation was not an adverse employment action.[8]

---

[8]    Ford argues that the Court incorrectly overlooked evidence that Ford's "termination" took effect. Aplt. Br. at 34. But Ford's own evidence supports

Ford attempts to sidestep the accepted definition of "adverse employment action" by combining all of his workplace conflicts in their "totality" in an attempt to construct a collective adverse action. Aplt. Br. at 36–40. There is no precedent supporting such a theory, and the cases Ford relies on illustrate that. Ford cites *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987), for the proposition that a "pattern of harassment or toxic work environment itself can be an adverse employment action." Aplt. Br. at 34. In *Hicks*, however, the Court was evaluating the evidence necessary to prove a *hostile work environment* claim. *Hicks*, 833 F.2d at 1412–13. The Court held that, in the case of racial discrimination at issue, "there must be a steady barrage of opprobrious racial comment" to qualify as a hostile work environment. *Id*. Ford has never alleged a hostile work environment—not in his EEO complaint, not in his district court complaint, not in opposition to summary judgment, and not in his brief to this court—and therefore he cannot employ that standard of proof in his discrimination claim.

the district court's finding. *See* App. Vol. C. at 143 (in notifying the Postal Service of Ford's approval for disability retirement, OPM stated that the "records sent us to date show that the individual *has not been separated.*") (emphasis added).

25

Ford also cites *Beaird v. Seagate Tech. Co.*, 145 F.3d 1159 (10th Cir. 1998), but *Beaird* did not address the proof necessary for an adverse employment action. Instead, the court stated that the "totality" of circumstantial evidence could be considered in evaluating the question of *pretext* in the third step of the *McDonnell Douglas* analysis. *Id*. at 1174. But pretext is not at issue in the present case. Under the *McDonnell Douglas* framework, Ford must first establish all the elements of a prima facie case, including that he suffered an adverse employment action. Ford cannot rely on the "totality of the evidence" standard of proof—applicable only at the pretext stage of the analysis—to prove that he suffered an adverse employment action.

The other circumstance where a court can consider allegedly discriminatory actions in the aggregate is in the context of a claim of constructive discharge. *See, e.g., Fischer v. Forestwood Co., Inc.,* 525 F.3d 972, 980–81 (10th Cir. 2008). A former employee can prove that their resignation was in fact a constructive discharge, and thus an adverse employment action, by presenting evidence of a series of events that, taken together, made the workplace intolerable for the employee.

26

*Id.* Ford, however, cannot rely on that standard of proof because he admits that he is not alleging a constructive discharge. Aplt. Br. at 39.

In the absence of a claim of hostile work environment or constructive discharge, Ford must point to a specific adverse action that caused a significant change in his employment status. Ford has failed to do that and thus cannot establish a prima facie case of disability discrimination.

## IV.    Ford failed to present evidence supporting his claim that the Postal Service retaliated against him because of his prior Rehab Act claim.

In his second EEO complaint, Ford alleged that the Postal Service retaliated against him for his prior EEO activity by failing to accommodate his disability in 2014, by issuing the notice of separation in October 2014, and by not restoring his employment benefits. As with disparate-treatment claims, retaliation claims can be proved by either direct or indirect evidence under the *McDonnell Douglas* framework. *Somoza v. University of Denver*, 513 F.3d 1206, 1211–12 (10th Cir. 2008). To establish a prima facie case of retaliation by the indirect method, a plaintiff must prove that (1) he engaged in protected activity; (2) he suffered an employment action that a reasonable employee would

27

find materially adverse; and (3) a causal link exists between the

protected activity and the challenged employment action. *Id.*; *see also*

*Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007)

(ADA retaliation claims).

As is the case with Ford's disparate-treatment claim, Ford's

retaliation claim fails because he has not suffered a materially adverse

employment action. Ford contacted the EEO counselor about the alleged

retaliation on October 24, 2014, so he cannot rely on alleged retaliation

prior to September 9, 2014. Ford alleges that the Postal Service

retaliated in that time frame by failing to accommodate his disability

and by "terminating" him, but the undisputed facts belie those claims.

By September 2014, Ford had been on medical leave—the only

accommodation available to him according to the medical

documentation submitted by Ford—for more than a year. In 2014, the

Postal Service attempted to accommodate Ford's physical limitations by

offering modified work requirements consistent with his doctor's

recommendations. Even with those proposed physical accommodations,

however, Ford's doctor continued to request that Ford be excused from

work because he was "unable to work" due to his "severe depression and

anxiety." App. Vol. A at 231–46. As a result, the Postal Service continued to accommodate Ford with a leave of absence.

Ford argues that the Postal Service had notice that he could have returned to work, relying on two records from Dr. Morse. Aplt. Br. at 58. But neither of those records provided a plausibly reasonable accommodation that could have allowed Ford to return to work. The first, dated August 7, 2013, specifically states, "I think he clearly is not ready to go back to work." App. Vol. C at 27. And in the second record, a letter dated November 3, 2014, Dr. Morse attributes Ford's "tremendous anxiety and depression" to an "employment dispute with . . . the Post Office." *Id*. at 119. Nowhere in either record does Dr. Morse suggest an accommodation that would allow Ford to return to work. To the contrary, in 2014, Dr. Morse's only "recommendation" was that Ford's "case be settled expeditiously and fairly, so that Mr. Ford can continue on with his life." *Id*.

Ford's claim that he was terminated, as discussed in detail above, has no support in the evidence. The notice of intent to separate Ford from the Postal Service was an administrative matter due to Ford's having been in leave-without-pay status for more than a year. The

29

notice was later rescinded, and the proposed separation of Ford was never implemented. Ford's health insurance benefits—which were discontinued by operation of law because Ford had been on leave for over a year, 5 C.F.R. § 890.303—were reinstated. Ford was not terminated, but instead applied for and was granted a disability retirement.

Ford has produced no evidence suggesting that any of the Postal Service's actions were motivated by an intent to retaliate against him for his EEO activity. And none of those actions adversely affected Ford's employment or benefits. In the absence of an adverse employment action, Ford cannot establish a prima facie case of retaliation.

## V. Ford failed to present evidence that the Postal Service interfered with his FMLA rights.

To establish a claim of FMLA interference, Ford must show that (1) he was entitled to FMLA leave; (2) some adverse action by the Postal Service interfered with his right to take FMLA leave; and (3) the Postal Service's action was related to Ford's exercise or attempted exercise of FMLA rights. *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 (10th Cir. 2014). Typically, FMLA interference and retaliation claims are subject

30

to a two-year statute of limitations. *Bass v. Potter*, 522 F.3d 1098, 1100 (10th Cir. 2008). An extended three-year statute applies only if the plaintiff can prove that the violation of FMLA was "willful." *Id.* at 1103–04 (citing 29 U.S.C. § 2617(c)(2)). A willful violation requires proof that the employer knew its actions were illegal or acted in reckless disregard for the lawfulness of its actions. *Id.* Ford has produced no evidence that his supervisors intended to violate the law or that they recklessly ignored the law in their dealings with his leave requests. Thus, the two-year statute of limitations applies to Ford's FMLA claims.

Ford filed his district court complaint on July 29, 2015, so the facts giving rise to his FMLA interference claim must have occurred on or after July 29, 2013. Ford must show that sometime in those two years he was prevented from taking FMLA leave, he was denied reinstatement following FMLA leave, or he was terminated while on FMLA leave. *Dalpiaz*, 760 F.3d at 1132. Ford has presented no evidence that he was ever prevented from taking FMLA leave.

In support of his claim, Ford relies exclusively on a single encounter with Andrea Gunnarson on April 15, 2013. Aplt. Br. at 10, 42, 49, 56. In a memorandum apparently written by Ford, he states that

31

Ms. Gunnarson questioned why Ford needed three FMLA-approved conditions and that she told him she would "fix that." App. Vol. B at 242–43. The memorandum fails to support Ford's claim of FMLA interference for two reasons. First, the alleged encounter with Gunnarson occurred on April 15, 2013, over three months prior to the two-year period encompassed by the FMLA's statute of limitations. Second, the statements attributed to Gunnarson do not reflect interference with Ford's FMLA leave rights.[9] In fact, Ford repeatedly took FMLA leave thereafter, to the point that he exhausted his 12 weeks of FMLA leave on September 14, 2013. Ford was never denied reinstatement after taking FMLA leave, nor was he terminated. There is simply no evidence that Ford was impaired in his use of FMLA-protected leave.

## VI. Ford failed to present evidence supporting his claim that the Postal Service retaliated against him for exercising his right to FMLA leave.

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Campbell v. Gambro Healthcare,*

---

[9]    Additionally, like much of Ford's evidence, the memorandum is hearsay that cannot be considered because it is an unauthenticated, unsworn document.

*Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). To make out a prima facie case of FMLA retaliation, Ford must show that (1) he exercised his FMLA rights; (2) the Postal Service took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between his FMLA use and the adverse action. *Id*. Ford asserts that the Postal Service disciplined him and terminated him in retaliation for his use of FMLA leave. Aplt. Br. at 19–20, 28. As discussed above, however, Ford was never terminated from the Postal Service. Instead, his tenure with the Postal Service ended with a disability retirement in May 2015.

Likewise, Ford was never disciplined for his use of FMLA leave. During the time he was on leave without pay, the Postal Service issued letters of warning on October 21, 2013, and February 14, 2014, due to a perceived lack of proper documentation of Ford's medical need for continuing leave-without-pay status. But Ford produced no evidence linking those letters to his previous use of FMLA leave. In fact, at the time the letters were issued, Ford was in an extended leave-without-pay status that was authorized by the Postal Service. Moreover, both letters

of warning were rescinded and purged from Ford's record, resulting in no adverse impact on Ford or his employment record.

Ford presented no evidence on which a reasonable jury could conclude that the Postal Service retaliated against him for taking FMLA leave. Further, the Postal Service took no action related to Ford's FMLA leave that a reasonable person could construe as materially adverse. The district court correctly concluded that Ford failed to support his claim of FMLA retaliation.

## CONCLUSION

For the foregoing reasons, the Postal Service requests that the Court affirm the decision of the district court granting summary judgment in favor of the Postal Service.

Respectfully submitted this 13th day of July, 2022.

TRINA A. HIGGINS
United States Attorney

*/s/ Amanda A. Berndt*
AMANDA A. BERNDT
Assistant United States Attorney
Utah Bar No. 15370BAR NO.]
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
amanda.berndt@usdoj.gov

## CERTIFICATE OF COMPLIANCE

My brief was prepared in a proportionally spaced typeface and contains 6,783 words. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*/s/ Amanda A. Berndt*

AMANDA A. BERNDT
Assistant United States Attorney
Utah Bar No. 15370
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
amanda.berndt@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and an electronic copy via the ECF system of the foregoing BRIEF FOR THE UNITED STATES was served to all parties named below, this 13th day of July, 2022.

> Jennifer L. Tomchak
> Nicole A. Skolout
> 10 West 100 South
> Salt Lake City, Utah 84101

*/s/ Amanda A. Berndt*
AMANDA A. BERNDT