## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| HOWARD O. FORD,<br><br>    Appellant,<br><br>vs.<br><br>MEGAN J. BRENNAN, Postmaster<br>General, United States Postal Service,<br><br>    Appellee. | **APPELLANT'S REPLY BRIEF**<br><br>No. 21-4086 |
| On Appeal from the United States District<br>Court for the District of Utah<br>No. 2:15-cv-00539-BSJ, The Honorable<br>Bruce S. Jenkins | |

Respectfully submitted,
Jenifer L. Tomchak (10127)
Nicole A. Skolout
10 W. 100 South, Suite 700
Salt Lake City, UT 84101
801-831-4820
Jen.tomchak@tomchaklaw.com

Oral Argument Requested

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ 4

INTRODUCTION ............................................................................. 6

RESPONSE TO USPS'S STATEMENT OF FACTS ........................ 6

ARGUMENT ..................................................................................... 8

I.      FORD APPROPRIATELY EXHAUSTED HIS              9
        ADMINISTRATIVE REMEDIES FOR HIS
        ACCOMODATION CLAIMS.

        **A.** USPS Did Not Preserve the 45-Day Limitation for Appellate        9
        Review.

        **B.** Ford Satisfied the 45-Day Rule.                                   10

        **C.** The 45-Day Rule Should Be Tolled.                                 13

        **D.** Ford Appropriately Raised His Failure to Accommodate              16
        Claim.

        **E.** The 45-Day Rule Does Not Prevent Consideration of Other          17
        Evidence.

II.     THE COURT SHOULD NOT WEIGH EVIDENCE.                                      18

        **A.** Ford's Evidence Demonstrates He was Not Accommodated.             18

        **B.** The District Court's Dismissal for Lack of Adverse Action         19
        Was an Error.

        **C.** USPS Retaliated Against Ford.                                     25

        **D.** USPS Interfered with Ford's FMLA Rights and Retaliated           27
        Against Him for Trying to Exercise Them.

CONCLUSION ................................................................................... 28

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................. 29

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY          29
REDACTIONS

CERTIFICATE OF SERVICE          30

**Exhibits:**

1. EEOC Compliance Manual

2. The Digest of Equal Employment Opportunity Law

3. Glenna O. v. Department of the Army

4. Reita v. Department of Transportation

## TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*, 519 U.S. 452, 461 (1997) ...............................................................11

*Bearid v. Seagate Tech.,* 145 F.3d 1159, 1104 (10th Cir. 1998) ............................21

*Briggs v. Henderson*, 34 F.Supp.2d 785, 788 (D. Conn. 1999) ...............................14

*Dixon v. Gonzalez*, 382 F.Supp.2d 911, 916 (E.D. Mich. 2005) ............................14

*Dye v. Moniz*, No. 16-2024, 672 Fed.Appx. 836 (10th Cir. 2016) .........................21

*Edwards v. Office of Personnel Management*, EEOC No. 01A14366 (EEOC OFO 2001)
........................................................................................................................14

*EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1096 (6th Cir.) *cert denied* 519 U.S.
963 (1996) .................................................................................................................15

*Exby-Stolley v. Board of Commissioners*, 979 F.3d 784, 803 (10th Cir. 2020) .......11, 21, 23

*Fitzgerald v. Henderson*, 251 F.3d 345, 359, 362 (2d Cir. 2001) ...........................12

*Glenna O. v. Dep't of the Army*, EEOC Appeal No. 2019005222 (Oct. 25, 2019).............12

*Green v. Brennan*, 578 U.S. 547, 557 (2016)........................................................10, 16

*Green v. Donahoe*, 760 F.3d 1135, 1142 (10th Cir. 2014) ................................16, 24

*Guerra v. Runyon*, EEOC Doc 01944190, 1994 WL 744965 (1994)....................................14

*Hickey v. Brennan*, 969 F.3d 1113, 1123 (10th Cir. 2020) ......................................15

*Hicks v. Gates Rubber Co.*, 833 F.3d 1406 (10th Cir. 1987)....................................21

*In re Walker*, 959 F.3d 894, 896 (10th Cir. 1992)....................................................10

*Johnson v. Glickman*, 155 F.Supp.2d 1240 (D. Kan. 2001) .....................................14

*Jones v. UPS, Inc.*, 502 F.3d 1176, 1184 (10th Cir. 2007).......................................16

*Koch v. Walter*, 935 F.Supp.2d 143, 150 (D. DC 2013)...........................................14

*Marquez v. Johnson*, 545 Fed. Appx. 735, 739 (10th Cir. 2013) ............................17

*McFarland v. Henderson*, 307 F.3d 402, 408 (6th Cir. 2002).................................................10

*Miles v. Kerry*, 961 F.Supp.2d 272, 288 (D. D.C. 2013)...........................................................14

*Reita v. Dep't of Trans.*, EEOC Appeal No. 2019001791 (June 4, 2019)...........................22

*Richardson v. Frank*, 975 F.2d 1433, 1436 (10th Cir. 1991) .............................................13, 14

*Roberts v. Roadway Exp.,* 149 F.3d 1098, 1104 (10th Cir. 1998).....................................21, 24

*Sizova v. NIST*, 282 F.3d 1320, 1327 (10th Cir. 2002) .............................................................14

*Smith v. Midland Brake, Inc.*, 98 F.Supp.2d 1233, 1243 (D. Kan. 2000)...........................12

*Talavera v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013)............................................................6

*U.S. v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000)............................................................10

*Ward v. Kempthorne*, 2008 WL 11382289 (D. Utah) ...............................................................14

*Williamson v. Shalala*, 992 F.Supp. 454, 458 (D.D.C. 1998)...................................................16

**Statutes**

29 C.F.R. §1614.105(a)(2)................................................................................................................15

42 U.S.C. §2000e-5(e)(1)..................................................................................................................21

42 USCA § 2000e-5, Note §2....................................................................................................17, 21

**INTRODUCTION**

Ford was subjected to weekly abuse by his supervisors on account of his disability, need for FMLA leave, and the protected activity he engaged in under both the Family Medical Leave Act ("FMLA") and the Vocational Rehabilitation Act ("Rehab Act"). Rather than review the evidence of this conduct in a light favorable to Ford, the district court erred when it made factual determinations in USPS's favor. It then applied those improper factual findings to incorrect legal standards as to how to establish a prima facie case for his Rehab Act and FMLA Claims (as defined in the Opening Brief, pp. 19-21). On that basis, it entered summary judgment against Ford. The district court's order must be reversed because there are genuine issues of material facts. When viewing those facts in Ford's favor, under the correct legal standards, USPS is not entitled to judgment as a matter of law. In its Brief, USPS ignores many of the district court's errors, presumably because it cannot defend them. Instead, USPS attempts to distract from those errors by raising new arguments for the first time and by asking this Court to perpetuate the error below by adopting USPS's facts. Neither is appropriate here.

**RESPONSE TO USPS'S STATEMENT OF FACTS**

The evidence presented by Ford must be regarded as true and all reasonable inferences drawn in his favor. *See Talavera v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013). Nevertheless, USPS's arguments rely on its conclusory factual statements and often fail to even acknowledge Ford's contrary evidence. Except for USPS's repeated insistence that Ford did not assert a claim for hostile work environment (hereinafter "HWE"), Ford does not separately address each of USPS's factual allegations here.

Many of USPS's arguments rely upon its repeated assertion that Ford never asserted a claim for HWE. [*See* Appellee Brief ("App'ee.Br. "), p. 13-14, 25, 27.] This continued insistence by USPS is perplexing because, in *USPS's* statement of *undisputed* material facts on the motion for summary judgment, USPS describes Ford's formal complaint of discrimination as asserting a claim that "management had created a hostile work environment":

> 31.    Ford filed his formal complaint of discrimination October 8, 2013. Ex. C. In that complaint, he again asserted discrimination based on gender, age, and disability. *Id.* He further alleged that he had multiple disabilities, that he had been denied union representation, that management disregarded his injuries and safety, and that he experienced disparate treatment compared to younger, female, non-disabled coworkers, and that ==management had created a hostile work environment==. Ex. C at USA002832.

[*See* Joint Appendix (JA), Vol. A, p. 84 at ¶ 31 (hereinafter cited as JA.Vol:pg).] USPS's contention is also verifiably false. Ford directly and indirectly refers to the hostile work environment repeatedly in his EEO complaint and investigative affidavit.[1] Those allegations and claims are carried forward and incorporated by reference into Ford's

---

[1] *See, e.g.,* EEO Complaint, JA.A:104("creation of hostile work environment"); JA.A:139(incorporating "Hostile Work Environment" statement into EEO affidavit; JA.A:156-157(investigation regarding the "hostile work environment" claim); JA.A:165("It is definitely a HOSTILE work environment"), JA.A:176(titling his statement about the USPS's treatment "HOSTILE WORK ENVIRONMENT"); JA.A:179(explaining that the events of July 16, 2013 were intended "to worsen an already HOSTILE work environment"); JA.A:183(new supervisors "make a hostile, unsafe, etc. work place"); JA.A:179:

> #2.    Since the arrival of Andrea Gunnarson and Heidi Clark to the Cottonwood Post Office in April 2013, has Cottonwood become a HOSTILE work environment? Answer: YES, YES, YES, ABSOLUTELY YES!!!

.

pleadings, which similarly complain about USPS's steady barrage of harassment towards Ford and expressly reference his HWE sub-claim.[2]

Where relevant, any additional factual statements will be addressed in the argument below. Any argument made by USPS that relies on its facts should be disregarded as contrary to the evidence presented by Ford. The court's improper weighing of evidence is, alone, a basis for reversal.

## ARGUMENT

USPS harassed and discriminated against Ford on a near weekly basis for months leading up to (and following) July 2013, told Ford and others it was going to "fix" his use of FMLA leave because "nobody needs three FMLAs", and repeatedly denied and removed accommodations from Ford in retaliation for his utilization of FMLA and efforts to seek accommodation. USPS asks this Court to ignore that conduct, look only at USPS's conduct after July 21, and to fragment its examination of USPS's conduct and its resulting impact (instead of viewing it and its impact as a whole). In doing so, USPS raises essentially two arguments: (1) it argues for the first time that Ford's failure-to-accomdate claims were untimely, and (2) USPS contends that Ford's evidence was insufficient to support his claims. Neither USPS's unpreserved exhaustion defense nor

_____

[2] *See, e.g.,* Complaint, JA.A:41, 47-48, 51, 55, at ¶30(on a frequent basis, . . . harass[ing] Ford about his need for reasonable accommodation"), ¶51("continued to harass . . . and continued to fail to accommodate"), ¶78("[Ford] is intending to assert . . . the sub-claims of . . . hostile work environment.").] The allegations further detail the numerous instances of conduct directed at him in 46 numbered paragraphs. [*See, e.g.,* Complaint JA.A.39-50, ¶¶19-65.]

its request for factual weighing is proper here.  Moreover, USPS's arguments cannot

withstand scrutiny under the controlling law of this Circuit and the evidence presented in

the record.

## I.  FORD APPROPRIATELY EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR HIS ACCOMMODATION CLAIMS.

USPS's primary argument with respect to Ford's failure-to-accommodate claim is

one that USPS never directly raised below.  Specifically, USPS argues that Ford failed to

exhaust his administrative remedies because (i) he did not contact an EEO counselor

within 45 days of his request and (ii) the EEO Charge he eventually filed did not identify

a failure-to-accommodate claim.  [App'ee.Br. 16-17.]  USPS further argues that because

of the foregoing, the district court should have ignored any evidence of USPS's conduct

prior to July 21, 2013.  These arguments are both legally and factually incorrect.

### A.  USPS Did Not Preserve its 45-Day Argument for Appellate Review.

First, USPS's 45-day argument is not ripe for appellate review.  Neither the

district court nor Ford had an opportunity to address it.  It was not squarely presented

below.  Instead, USPS's exhaustion argument in the motion for summary judgment

focused on Ford's claim for retaliation and the content of his 2013 EEO charge.

[JA.A:88.] USPS never directly asserted that Ford did not timely initiate contact with an

EEO counselor.  Had USPS directly raised this argument, Ford could have responded

with the arguments set forth in Section I(B) that his contact timely encompassed USPS's

ongoing refusal to accommodate Ford and in Section I(C) that the deadline should have

been tolled.  Accordingly, the Court should reject this argument as waived and not

apparent from the record.  *See U.S. v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000); *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992).

### B.  Ford Satisfied the 45-Day Rule.

Moreover, Ford did satisfy the 45-day limitation.  Ford contacted an EEO counselor by September 4, 2013, thereby timely contacting the EEO for any failure to accommodate that continued past July 21, 2013, including USPS's refusal to accept his workplace restrictions on July 22, 24, and 29 and thereafter. [*See* App.Br. 15-17 (summarizing denials).] Furthermore, Ford's contact timely encompasses USPS's pre-filing conduct under the laws and regulations governing the application of the 45-day rule.  Under 29 CFR § 1614.105(a)(1), an aggrieved individual must "initiate contact" with an EEO Counselor "within 45 days of the matter alleged to be discriminatory".  Courts have interpreted "the matter alleged to be discriminatory" broadly to encompass all of the conduct alleged to be discriminatory "so long as those acts are part of the same, single claim under consideration,'" *Green v. Brennan*, 578 U.S. 547, 557 (2016), or arises from behavior that is ongoing, continuing, or part of a pattern or series of actions, *see, e.g., McFarland v. Henderson*, 307 F.3d 402, 408 (6th Cir. 2002) (concluding employer may be liable for conduct outside the 45-day window for claims based on HWE or a "continuing violation composed of successive discrete acts"); EEOC Compliance Manual (hereinafter "EEOCCM"), relevant excerpts attached as Exhibit 1, §2-IV(C); 2 Digest of Equal Employment Opportunity Law (hereinafter "EEOC Digest"), Exhibit 2, p.31 (Mar. 2020) ("Generally, a claim is timely raised if at least one of the incidents cited by the complainant as evidence in support of his/her claim occurred within the 45-day period for

10

contacting the EEO Counselor").  In those instances, the 45-day rule will be satisfied if at least one of the discriminatory acts giving rise to the claim occurred within the 45-day window.

The EEOC Compliance Manual, which is entitled to substantial deference,[3] expressly identifies three types of claims in which liability extends to conduct that predates the filing period as long as one discriminatory act occurred therein.  First, liability will extend beyond the 45-day period for "[r]epeated occurrences of the same discriminatory employment action." EEOCM, Ex. 1, §2-IV(C). The EEOC uses a repeated failure to accommodate as a specific example of this type of claim "because an employer has an ongoing obligation to provide a reasonable accommodation" and "violat[es that obligation] each time the employee needs it." *Id.*  Second, liability extends beyond the filing period where the employer's conduct "'collectively constitute[s] one 'unlawful employment practice,'" such as a HWE claim.  *Id.*  Third, liability extends beyond the filing period for discriminatory acts that "are part of a practice or pattern of discrimination." *Id.*  This includes both systemic policies of discrimination and repeated violations directed at one employee that continue over a period of time to such a degree that they are "tantamount to a policy or practice of tolerating such discrimination."

---

[3] *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (The EEOC's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation'"); *Exby-Stolley v. Board of Commissioners*, 979 F.3d 784, 803 (10th Cir. 2020) (As an administrative interpretation of the Act by the enforcing agency, EEOC's interpretive guidance "constitute[e] a body of experience and informed judgment to which courts and litigants may properly resort for guidance").

*Fitzgerald v. Henderson*, 251 F.3d 345, 359, 362 (2d Cir. 2001) (A claim for pattern or practice of discriminatory conduct is actionable as a continuing violation "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."); *see Glenna O. v. Dep't of the Army*, Exhibit 3, EEOC Appeal No. 2019005222 (Oct. 25, 2019) (EEO counselor contact was timely when employee asserted claim for pattern of harassment and pre-filing conduct was "part of that harassment claim"); *Smith v. Midland Brake, Inc.*, 98 F.Supp.2d 1233, 1243 (D. Kan. 2000) (finding continuing failure to accommodate during an 8-month period was sufficient to establish "a company-wide policy of discrimination both before and during the limitations period").

Under this guidance, Ford's contact with an EEO counselor timely encompassed not just USPS conduct post-July 21, but its pre-July 21 conduct that continued into the filing period because Ford presented evidence of several similar discriminatory acts, perpetuated by the same individuals that included denials and removals of accommodations close in time and during the filing period. This repeated failure to accommodate is precisely the example EEOC used as a "repeated occurrence of the same discriminatory action" for which liability extends outside the filing period. [EEOCM, Ex. 1, §2-IV(C).] The conduct is also evidence of Ford's HWE claim and is "part of a practice or pattern of discrimination" Ford complained of, amounting to a policy discrimination against its disabled workers. *See Smith*, 98 F.Supp.2d at 1243. Ford presented evidence of numerous discriminatory acts that continued into the filing period, including the repeated refusal to accept and agree to abide by Ford's workplace

restrictions.  [*See* App.Br. 15-17 (summarizing evidence of denials during filing period).]

For example, when Ford returned to work his supervisor argued with the Health and

Resource Management Specialist about having to accommodate Ford [JA.C:17], and told

Ford that she viewed those restrictions as "just suggestions," implying he would be at her

mercy, and thereafter refused to accommodate his psychological disability with the

requested assurance that his restrictions would not be arbitrarily removed.  [*Id.* at

15(citing JA.B:19, 203).]  In other words, because Ford's failure-to-accommodate claim

asserts liability for behavior that is repeated, continuing, or part of a pattern that is

tantamount to a policy, the 45-day rule was satisfied and encompassed pre-filing conduct

when USPS repeated its discriminatory conduct within the 45-day window.

### C.  The 45-Day Rule Should Be Tolled.

Even if Ford's contact was not timely (it was) or his claim did not fall within the

categories of continuing violations described above (it did), there are disputed facts as to

whether the 45-day rule was satisfied earlier or should have been tolled.  Because the 45-

day argument was never raised, Ford had no opportunity to fully develop the record as to

either.  Even if he had done so, however, whether tolling is warranted is a factual

determination, inappropriate for summary judgment. *See Richardson v. Frank*, 975 F.2d

1433, 1436 (10th Cir. 1991).

It is worth noting that how the 45-day rule is applied and the waiver, estoppel, and

tolling exceptions thereto are interpreted is much more lenient than a typical statutes of

limitations to effectuate the remedial purpose of the Rehab Act and prevent the truncated

filing period from acting as a "useless procedural technicality" to trap unwary victims.[4]

*Miles v. Kerry*, 961 F.Supp.2d 272, 288 (D. D.C. 2013).  Courts and the EEOC have

liberally applied the 45-day rule and its exceptions to allow an employee to proceed on

all of their claims if the employee diligently attempted to pursue their rights.  *See Ward v.*

*Kempthorne*, No. 2:08CV1DAK, 2008 WL 11382289, *4 (D. Utah) (liberally applying

equitable tolling doctrine to extend the filing deadline where federal employee acted with

reasonable diligence in pursuing his EEO claim); *Dixon v. Gonzalez*, 382 F.Supp.2d 911,

916 (E.D. Mich. 2005) (applying tolling even where employee had actual and

constructive knowledge of limit and the employer was prejudiced).  For example, the

initiate-contact requirement is satisfied if the employee contacts any "agency official

logically connected to the EEO process, even if that official is not an EEO counselor,"

even their own supervisors or other agency management, with the intent to begin the

EEO process.[5]  The regulation requires tolling in instances where the employee was

unaware of the time-limit or the fact that missing it would result in the loss of claims,

---

[4] *See Sizova v. NIST*, 282 F.3d 1320, 1327 (10th Cir. 2002) ("The 45 day statute of limitations is not reasonable if agencies and courts do not liberally construe the . . . exceptions."); *Richardson*, 975 F.2d at 1436 ("[R]emedial legislation is to be construed liberally rather than technically.  The procedural requirements of [remedial legislation] should not be allowed to become so formidable and inflexible as to preclude the aggrieved employee from receiving relief from employment discrimination.").

[5] *See Koch v. Walter*, 935 F.Supp.2d 143, 150 (D. DC 2013); *see Edwards v. Office of Personnel Management*, EEOC No. 01A14366 (EEOC OFO 2001), *available at https://www.eeoc.gov/sites/default/files/migrated_files/decisions/01A14366_r.txt*.  *See Guerra v. Runyon*, EEOC Doc 01944190, 1994 WL 744965 (1994); *Briggs v. Henderson*, 34 F.Supp.2d 785, 788 (D. Conn. 1999) (cited with approval by *Johnson v. Glickman*, 155 F.Supp.2d 1240 (D. Kan. 2001)).

when despite due diligence the employee was prevented from contacting the EEO counselor, and where the employer's conduct induced the employee to delay filing. *See* 29 C.F.R. §1614.105(a)(2); *Hickey v. Brennan*, 969 F.3d 1113, 1123 (10th Cir. 2020). The court also has discretion to extend the time limit for other reasons. *Id.*

USPS claims Ford cannot take advantage of the tolling doctrines because he was represented by counsel. But the counsel exception applies only for those periods of time during which the individuals are actually represented by counsel. *See, e.g.*, *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1096 (6th Cir.) *cert denied* 519 U.S. 963 (1996) (filing period begins to run when charging party retains lawyer). Ford did not engage counsel until September 4, 2013, the same day he initiated contact with the EEOC. Therefore, Ford presented sufficient evidence to create a disputed material fact as to whether he satisfied the initiate-contact requirement much earlier or whether tolling was appropriate. For example, Ford was diligently pursuing his rights by reporting his concerns to or attempting to meet with those logically connected to the EEO process--his supervisors, members of the District of Reasonable Accommodation Committee (DRAC), the Health and Resource Management Specialist, and the union steward; he was not represented by counsel and did not know about the 45-day deadline or that it would potentially bar his claims prior to September 4, 2013; he was under heavy medication that impaired his ability to initiate contact; USPS interfered with Ford's efforts by refusing his requests to meet with DRAC, denying him time to meet with his union representatives, and refusing to provide him with necessary paperwork; and Ford was delayed waiting for USPS to respond to his request for accommodation after he provided them

documentation. *See Williamson v. Shalala*, 992 F.Supp. 454, 458 (D.D.C. 1998) (45-day limit should not begin to run on date of the request, but rather within a reasonable time after waiting for a response). Each of these are grounds the EEOC recognizes as appropriate for equitable tolling. *See* EEOCM, Ex. 1, §2-IV(D) (discussing grounds for tolling, estoppel, and waiver). When viewed in the light most favorable to Ford and the broad remedial purpose of the Rehab Act, it would be improper to summarily conclude that any of Ford's claims are untimely or that tolling was unwarranted.

### D. Ford Appropriately Raised His Failure to Accommodate Claim.

Ford also appropriately raised his failure-to-accommodate claim in the 2013 EEO Charge. A claim has been exhausted if the EEO "charge . . . contain[s] facts concerning the discriminatory and retaliatory actions underlying [the] claim." *Green v. Donahoe*, 760 F.3d 1135, 1142 (10th Cir. 2014) *vacated and remanded on other grounds Green v. Brennan*, 578 U.S. 547 (2016). This is true even if the charge is drafted with the assistance of counsel and even if the charge does not directly identify the specific type of claim. *See id.* Rather, the test is whether it "describe[s] generally the action or practices complained of." *Jones v. UPS, Inc.*, 502 F.3d 1176, 1184 (10th Cir. 2007). The charge is then deemed to include "the scope of the administrative investigation that can reasonably be expected to follow the charge'" or "from the discriminatory *acts* alleged in the administrative charge" and all claims "reasonably related" to those claims the employee did assert. *Id.* at 1186.

In Ford's EEO complaint and investigative affidavit, he describes in detail the requests for accommodation that were denied. [*See, e.g.,* JA.A:125-130, 186-194, 203-

208.]  Not only could USPS reasonably expect for the failure-to-accommodate claim to

be investigated from the facts presented by Ford in his charge and supporting affidavit,

the claim was actually investigated.  The 2013 EEO affidavit contains very specific

questions to Ford about his requested accommodation and denials. [*See* JA.A:114-116

(asking Ford about his medical condition, whether he made USPS aware of it, whether he

requested accommodation, and whether USPS accommodated him).]  Accordingly, Ford

exhausted his failure-to-accommodate claim.

### E.  The 45-Day Rule Does Not Prevent Consideration of Other Evidence.

USPS's statement that Ford cannot present evidence of any actions that took place

prior to July 21, 2013, is also contrary to the law.  Even if discrete discriminatory acts are

untimely and, therefore, unactionable, they may still "be considered as background

evidence" of discrimination. There is *no* time limit on relevant evidence."  EEOCCM,

Ex. 1, §2-IVC(a) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 US 101, 113

(2002)); *see also Marquez v. Johnson*, 545 Fed. Appx. 735, 739 (10th Cir. 2013) (court

may consider acts "that occurred outside the filing period"); EEOC Digest, Ex. 2, p.31

("An agency must consider, at least as background, all relevant evidence offered in

support of a timely raised claim, even if the incidents occurred outside the 45-day

limitation period."); 42 USCA § 2000e-5, Note §2 ("With regard to *any charge of*

*discrimination* under *any law,* nothing in this Act is intended to preclude or limit an

aggrieved person's right to introduce evidence of an unlawful employment practice that

has occurred outside the time for filing a charge of discrimination." (emphasis added)).

Thus, the district court should have considered all of Ford's evidence regardless of

whether it pre-dated the filing period.

## II.    THE COURT SHOULD NOT WEIGH EVIDENCE.

All of USPS's remaining arguments ask this Court to weigh evidence in USPS's favor.  The Court should decline to do so. Instead, accepting Ford's evidence as true and drawing reasonable inferences in his favor, the Court should reverse summary judgment on the grounds that there exist material issues of disputed facts as to whether Ford was accommodated, needed or suffered an adverse employment action, was retaliated against, or was deterred from using FMLA leave.

### A.    Ford's Evidence Demonstrates He was Not Accommodated.

The district court dismissed Ford's failure-to-accommodate claim, holding USPS had no obligation to accommodate Ford based on its determination that Ford was not an otherwise qualified individual, that USPS was required to have "documented notice" of a request for a specific accommodation, and that Ford's requested accommodation was not reasonably plausible.  USPS does not address any of these errors, which were fully briefed in the Opening Brief, pp. 45-60.  Instead, it argues only that USPS did accommodate Ford on July 24, 2013, and that it attempted to accommodate Ford in 2014, but no accommodation other than unpaid leave was available.  [App'ee.Br. 18-19, n.7, 28-29.]  Notably, many of these assertions are made without citation to the record. Accepting these statements would not only require improper factually weighing, but it still does not relieve USPS from liability for its additional failures to accommodate.  Ford presented evidence that he made a number of requests for accommodation that were denied.  These repeated failures are detailed in Section I(B) above and Ford's Opening

18

Brief.  [*See* App.Br. 15-19, 48-50, n.12, 57-59 (summarizing failures to accommodate before and after July 24 and record evidence thereof).]  Ford also presented evidence that on July 24, 2013, he requested that USPS agree to honor his workplace restrictions, which request his supervisor refused, stating that she just viewed them as suggestions and implying that Ford would be at her mercy.  [Sum-J.Opp.(JA.B:19); JA.A.177-78.]  There is ample evidence to create an issue of fact as to whether there were other accommodations available to Ford.  [*See* App.Br. pp. 50-52, 57-59 (discussing evidence that Ford could return to work if USPS agreed not to harass Ford and to honor his workplace restrictions).]  In response to the modified job offer, Ford requested information about whether USPS would adhere to his workplace restrictions to accommodate his psychological disability.  [*Id.,* Ex.25(JA.C:136)].  But USPS responded "no additional terms will be addressed." [*Id.,* Ex.25(JA.C:138)].  Accepting Ford's evidence as true and drawing the reasonable inferences therefrom, Ford was not accommodated on July 24 or any other time complained of.  The dismissal of Ford's failure-to-accommodate claim must be reversed.

**B. The District Court's Dismissal for Lack of Adverse Action Was an Error.**

The district court erred when it dismissed Ford's FMLA and Disability Discrimination Claims on the ground that there was no adverse employment action.  This dismissal relied on the court's finding that Ford had not been terminated and on its fragmented review of USPS's conduct and holding that an adverse employment action was necessary to establish a prima facie claim even when there is direct evidence of discriminatory animus.  USPS only seeks affirmation of the district court's ruling as it

relates to Ford's disparate treatment and disability retaliation discrimination claims, thereby implicitly conceding that such ruling was inappropriate as it related to Ford's FMLA and other Disability Discrimination Claims.  [App'ee.Br. 21, 27.]

       i.     *Ford was Terminated.*

In seeking affirmation of the district court's holding that Ford did not suffer an adverse employment action, USPS first asks this Court to conclude that Ford was not terminated.  This factual weighing is improper on a motion for summary judgment or review on appeal.  USPS admits that it issued the notice of separation and that to keep his job, Ford had to go through the grievance process.  [App'ee.Br.23-24.]  Ford presented evidence that his personnel file still lists his status as terminated, that he lost his employment benefits, and that he was never allowed to return to work.  [JA.C:102.]  This, alone, is an adverse employment action.

       ii.    *USPS's Conduct Should be Reviewed in Totality.*

USPS next contends that the Court should disregard or fragment its review of the other evidence Ford presented to establish an adverse action.  In making this request, USPS repeatedly states that such "totality of the circumstances" review is only appropriate in the context of a HWE or constructive discharge claim.  The rule urged by USPS is inapposite as Ford indisputably did assert a HWE claim, *see supra* pp. 6-7. Thus, the Court should consider all of the conduct alleged against USPS and the aggregate impact such conduct had on Ford's employment even under the standard urged by USPS.  Additionally, USPS argument that the court could only view USPS's conduct in silos outside of the HWE context relies on relies on distinguishable, outdated

precedent,[6] is inconsistent with this Court's precedent[7] and relevant EEOC guidance, and defies logic. The EEOC has rejected the practice followed by the district court and urged by USPS, labeling such piecemeal review as a "common error". Specifically, regardless of whether a claim is "clearly characterize[d]" as a HWE claim, the factfinder should

---

[6] Specifically, USPS relies on *Dye v. Moniz*, No. 16-2024, 672 Fed.Appx. 836 (10th Cir. 2016), a memorandum decision in which this Court interpreted the statute of limitations under 42 U.S.C. §2000e-5(e)(1), which bars claims filed more than 300 days after an "unlawful employment practice occurred." Whether *Dye* is still good law is questionable since its holding relied on the now superseded holding of *Morgan*, 536 U.S. 101 (2002). The U.S. Legislature, in enacting new statutes to avoid the result reached in *Morgan* and similar cases—which prevented recovery for related discriminatory conduct that occurred prior to the filing period—explained that such results "significantly impair statutory protections against discrimination" and "undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices." 42 U.S.C.A. § 2000e-5, Note §2. Congress further noted, "[t]he limitation imposed by the Court . . . is at odds with the robust application of civil rights laws that Congress intended." *Id.* In any event, the 45-day limitation is distinct from the statute interpreted in *Dye*. Specifically, it requires the initiation of contact within 45 days for "the matter alleged to be discriminatory" rather than the stricter requirement of filing a charge within 300 days of the "unlawful employment practice."

[7] *See Exby-Stolley*, 979 F.3d at 817 (adopting terms-conditions-and-privileges-of-employment standard, which "covers a wide range of conduct *within* the employment context" and "combat[s] the '*entire spectrum'* of workplace discrimination")*; Roberts v. Roadway Exp.,* 149 F.3d 1098, 1104 (10th Cir. 1998) (examining multiple instances of employer's conduct and cumulative impact thereof to determine whether he suffered an adverse employment action to support retaliation claim); *Beaird v. Seagate Tech.,* 145 F.3d 1159, 1104 (10th Cir. 1998) (requiring consideration of "totality of circumstantial evidence" for pretext determination); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir 1987) USPS asks this Court to disregard its own language in *Hicks* that a "pattern of harassment or toxic work environment itself can be an adverse employment action" because the claim at issue in *Hicks* was a HWE claim. 833 F.2d at 1412. Nowhere in *Hicks* did this Court limit its adverse action analysis in such an artificial way. Although the Court noted in *Hicks* that to prove a HWE claim, there must be a "steady barrage" of conduct aimed at the employee, nowhere did it say that such a steady barrage of discriminatory conduct could only be used to prove a HWE claim.

review all of the facts alleged in the complaint and in the EEO counseling report to

determine whether their cumulative impact changed "a term, condition, or privilege of

employment":

> As noted, agencies often fail to distinguish between the complainant's factual allegations in support of the legal claim and the legal claim itself. This leads to fragmentation of claims that involve a number of different incidents and can impede the complainant from presenting a unified and coherent claim of discrimination. Specifically, agencies often separately dismiss these fragmented individual incidents raised in support of a claim of harassment and hostile work environment for failure to state a claim and/or failure to timely initiate the EEO process. In so doing, the agencies assert that the incidents are trivial or insufficiently severe, and that the complainant suffered no harm regarding a term, condition, or privilege of employment. Agencies also find that incidents occurring more than 45 days prior to the complainant's contact with an EEO Counselor are untimely. However, as we have indicated, processing a complaint this way fails to recognize the continuing pattern of alleged harassing conduct or the ongoing nature of such a claim. To address and counter this perspective, the Commission considers both the language in the complaint itself, as well as the information in the related EEO counseling report, when reversing an agency's dismissal of a fragmented harassment claim. The Commission will address fragmentation and harassment, even if a complainant did not clearly characterize the claim as a harassment/hostile
>
> work environment claim.|

EEOC Digest, Ex. 2, p. 32 (citing EEOC Guidance "Preserving Access to the legal

System: Common Errors by Federal Agencies in Dismissing Complaints of

Discrimination on Procedural Grounds" (Sept. 2014)); *see also Reita v. Dep't of Trans.*,

Exhibit 4, EEOC Appeal No. 2019001791 (June 4, 2019) (reversing dismissal because

instead of viewing all of the alleged incidents collectively, "the Agency considered some

of the incidents individually as a claim for disparate impact and others as part of the

claim for harassment. . . .[thereby] acting improperly by treating matters raised by

Complainant's complaint in a piecemeal manner"). It would defy logic and be entirely

unjust to review the same alleged conduct and determine for one plaintiff that it

constituted an adverse action, but not for another, simply because of how the claim was

styled or how the employee reacted.

> iii.    *Ford Did Not Need to Show An Adverse Employment Action.*

USPS's contention that Ford had to demonstrate an adverse employment action at

all is also inconsistent with the law.  USPS does not address the legal authority in Ford's

Opening Brief that the Rehab Act claims require an impact on the "terms-conditions-and-

privileges-of-employment" (rather than the more restrictive adverse employment action).

[App.Br., p.33.]  USPS appears to agree with Ford that proof of an adverse employment

action is only required in the absence of direct evidence of discriminatory animus, but

later claims that the employee must show an adverse employment action to show

disparate treatment or retaliation even where direct evidence is presented.  [App'ee.Br.

21-22, 28].  Those positions are inconsistent and appear to based on a misunderstanding

of this Court's holding in *Exby-Stolley*, 979 F.3d at 795-96.  Specifically, in *Exby-Stolley*,

this Court distinguished between a disparate-treatment and failure-to-accommodate claim

by emphasizing that an adverse employment action is never necessary to prove a failure-

to-accommodate because the lack of accommodation itself "satisfies" the discriminatory

animus requirement.  *Id.* at 795.  It explained a disparate-treatment claim, however,

requires proof of "*an employment action*." *Id.* at 796 (emphasis added).  Nowhere does

the Court require an adverse employment action as USPS argues; rather only an

employment action motivated by discriminatory animus.  *See id.*  Here, Ford did not need

to show an adverse employment action because he presented direct evidence of

discriminatory animus—such as direct statements from his supervisors about their intent to target Ford for using FMLA leave to accommodate his disability [App.Br. §II(C) (summarizing direct evidence of discriminatory animus)]—and because there is no such requirement for his Rehab Act claims.

      iv.    *Ford Presented Evidence that He Suffered an Adverse Action.*

But even if an adverse employment action were required, Ford easily meets that requirement. Termination or separation are by their very nature an adverse employment action and unquestionably a change in the terms and conditions of employment, even if later withdrawn. *See Roberts,* 149 F.3d at 1104. Ford was subjected to ongoing harassment, discrimination, interference with, and retaliation for his FMLA leave, his disability, and efforts to obtain a reasonable accommodation for such disability. The conduct Ford alleges against USPS is even worse than the conduct present in *Roberts,* where this Court held that the employee suffered an adverse employment action. It would be completely illogical to hold that the conduct directed against the employee in *Roberts* was an adverse employment action because that employee resigned, but then hold that the same (or worse) conduct directed at Ford was not an adverse employment action because USPS fired Ford (or treated him so poorly that he suffered a mental breakdown that prevented him from working without an accommodation). Whether an employer's conduct constitutes an adverse employment action should depend only on the nature of the conduct and not on how the employee reacts to it. *See Green*, 76 F.3d at 1147 (employee "does not lose his claim just because he may be more resilient than most").

In sum, whether the Court reviews USPS's conduct under the correct legal standards or those urged by USPS and followed by the district court, Ford presented sufficient evidence to create disputed issues of material facts as to whether Ford suffered an adverse employment action or, more correctly, whether such conduct altered his terms-conditions-and-privileges-of-employment. The district court's dismissal of Ford's Disability Discrimination and Retaliation Claims on this basis should be reversed.

## C.    USPS Retaliated Against Ford.

USPS's claim that Ford did not complain to the EEO of retaliation until October 24, 2014, is not consistent with the evidence presented by Ford which must be regarded as true. Specifically, as conceded by USPS, Ford contacted the EEO counselor no later than September 9, 2013. Thus, any conduct by USPS from July 21, 2013 forward was timely. And, as addressed above, because the retaliation was part of a pattern of conduct by USPS, acts prior to July 21, 2013 should also be considered both for purposes of imposing liability or, at a minimum, as additional evidence of retaliation. *See supra* Section I(B), (E). The formal EEO Complaint details USPS's conduct towards Ford in retaliation for his use and attempted use of FMLA leave and requests for accommodation, including "denial of union representation, disregard for injuries and safety, disparate treatment when compared with . . . non-disabled carriers . . . ." [JA.A.104.] His EEO Investigative Affidavit shows that he alleged and the EEO investigated the conduct he claims was retaliatory, including, for example, the harassment Ford encountered related to medical documentation after taking FMLA leave [JA.A.117-118], related to his request for accommodation [JA.A.122, 124 ("She targeted me because of my FMLA")], related

to his request for FMLA leave [JA.A.130 (supervisor refusing to give him injury paperwork, ending his tour, and telling him she did not care that he had FMLA leave when he had to go to the doctor)], and USPS's insistence on seeing his doctor's notes even after being informed that the note had been sent to FMLA (HRSSC) and over objections related to HIPPA [JA.A.160.]  After he requested accommodations, not only was the request denied, but he was refused paperwork and union time necessary to timely report his injury and USPS's improper responsive conduct, screamed at in front of his peers, and bullied him for his mental condition. [JA.A.177-178.]

Moreover, this recent claim by USPS was not presented to the district court and, thus, was waived and not preserved for appellate review.  *See supra* Section I(A). In USPS's motion for summary judgment, it complains only that Ford did not contact an EEO counselor for USPS's conduct that occurred after December 9, 2014.  [JA.A:88.] Nowhere in its motion did USPS complain that Ford's claims for retaliation pre-dating September 9, 2014 were time-barred.  As set forth above, Ford was subjected to an adverse employment action.  *See supra* Section II(B).  Nearly all of the conduct alleged by Ford to support that he suffered an adverse employment action is also supportive of the claims for retaliation—USPS treated Ford horribly both because he was disabled and because he engaged in protected activity related to the disability such as using FMLA leave.

In each instance, USPS's purposed factual statements are inconsistent with the evidence presented by Ford, which must be regarded as true.  In other words, to accept USPS's position, this Court and the district court below would have to weigh disputed

26

evidence.  This should not be done on a motion for summary judgment.

### D.    USPS Interfered with Ford's FMLA Rights and Retaliated Against Him for Trying to Exercise Them.

USPS makes two arguments to avoid liability for its interference with Ford's FMLA rights.  First, it argues that Ford's claims are subject to a two-year statute of limitations because "Ford has produced no evidence that his supervisors intended to violate the law."  This is inconsistent with the actual evidence presented by Ford, which must be regarded as true.  Specifically, Ford presented evidence that his supervisor told Ford she did not intend to allow him to take FMLA leave and that she would "fix" him. [App.Br. 10-13 (citing JA.B:11, 242-43) (summarizing threats against Ford).] Accordingly, the three-year statute of limitations applies and Ford timely filed his complaint by July 29, 2015, encompassing all of USPS's FMLA interference from July 29, 2012 forward.[8]

Next, USPS claims Ford must show that he was prevented from taking FMLA leave, was refused reinstatement following FMLA leave, or was terminated while on FMLA leave.  [App'ee.Br. 31.]  Not only is this argument incorrect—FMLA interference can encompass any conduct intended to discourage use of FMLA leave—but Ford has

---

[8] USPS's new claim that Ford's evidence should not be considered because it is inadmissible hearsay is rich given the parties' stipulation to the admissibility of the very documents containing the statements USPS relied upon and now claims are inadmissible. [App'ee.Br. 32, n.9.]  Notably, the documents Ford relies on as evidence of USPS's discriminatory animus were submitted by *USPS* as evidence supporting the motion for summary judgment.  For obvious reasons, USPS never questioned the admissibility of its own exhibits during the briefing and argument of motion for summary judgment. Accordingly, such argument was not properly preserved and is waived.  Furthermore, had such argument been raised, Ford could easily have cured any admissibility concerns by providing additional sworn statements.

presented evidence of precisely such conduct. Additionally, USPS argues Ford cannot show he was retaliated against for his FMLA usage because "Ford was never terminated," "Ford was never disciplined for his FMLA leave," and that USPS "took no action related to Ford's FMLA leave that a reasonable person could construe as materially adverse." [App'ee.Br. 33-34.] Put frankly, these unsupported factual assertions are contrary to evidence presented by Ford and would require the weighing of disputed evidence. Ford's evidence that his supervisors deterred Ford from using FMLA leave by singling him out and engaging in a campaign to punish, humiliate, and otherwise discourage Ford from using his FMLA leave, such as by threatening him with discipline and issuing letters for warning, threatening to treat his leave as AWOL and direct statements about their intent to "fix" Ford from using his FMLA leave are detailed in the Opening Brief. [*See* App.Br. 10-13 (citing Sum.J.Opp.(JA.B:11, Ex.5(JA:B:242), Ex.4(JA.B:235), Ex.6(JA.B:251)).] After he used FMLA leave, his supervisors' treatment of him worsened. *See id.* The fact that Ford has never been permitted to return to his position following his FMLA is indisputable. Any of this conduct would deter a reasonable employee from utilizing FMLA leave. The court's dismissal of Ford's FMLA Claims should, therefore, also be reversed.

## CONCLUSION

In summary, the district court erred when it made factual findings over Ford's contrary evidence and then applied those improper findings to incorrect legal standards. On those bases, the Court should reverse the court's dismissal of Ford's Rehab Act and FMLA claims and remand those claims for trial.

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains no more than 6,400 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

**CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS**

I certify that with respect to the foregoing: (1) all required privacy redactions have been made pursuant to Tenth Circuit Rule 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program (MSdefender), and according to the program are free of viruses.

Executed this 19th day of August, 2022.

TOMCHAK SKOLOUT, PC


/s/Jenifer L. Tomchak
Jenifer L. Tomchak
Nicole A. Skolout
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I certify that on the 19th day of August, 2022, I electronically filed the

foregoing **APPELLANT'S REPLY BRIEF** with the Clerk of Court using the

CM/ECF system, which electronically served the following:


Amanda A. Berndt
US Attorney's Office
111 S Main St Ste 1800
Salt Lake City, UT 84111-2176
amanda.berndt@usdoj.gov

*/s/ Abigail Leatherbury*